1
2
3
4
5
6
7
8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   SHAW WENSEL,

11           Plaintiff,                    No. CIV S-07-0900 JAM EFB P

12        vs.

13   FERNDANDO GONZALES, Warden,

14           Defendant.                    FINDINGS AND RECOMMENDATIONS

15   _____/

16        Plaintiff is a prisoner proceeding without counsel in an action brought under 42 U.S.C.

17   § 1983.  He has filed a motion for a preliminary injunction requesting an order that he be

18   retained "at Mule Creek State Prison in the cell that he's getting the legal assistance out of until

19   the court" has resolved this action."  Pl.'s Mot. for Prel. Inj., at 3.  It appears that plaintiff's

20   concern, and reason for his motion, is that he does not want to be placed in dormitory-style

21   housing.  The second amended complaint, filed January 15, 2009, asserts that he has for years

22   informed prison officials that he has relatives who work for the California Department of

23   Corrections and Rehabilitation and that fellow prisoners have previously threatened him because

24   of this.  The complaints asserts that he fears he will be attacked in the future because of this

25   association if he is forced to live in dormitory-style housing.  He claims that prison officials have

26   been deliberately indifferent to his safety by refusing to place in his central file a formal notice

                                              1

about the potential danger and by ordering that he move from a cell to dormitory-style housing.

Through not fault of his own, plaintiff was transferred to the California Correctional Institution in Tehachapi, California while his motion was pending.  However, the court construes his request as seeking an order requiring that he not be forced to live in dormitory-style housing at the facility where he is currently located.  For the reasons explained below, the motion must be denied..

A preliminary injunction will not issue unless necessary because threatened injury would impair the court's ability to grant effective relief in a pending action.  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984); *Gon v. First State Ins. Co.*, 871 F.2d 863 (9th Cir. 1989).  A preliminary injunction represents the exercise of a very far reaching power never to be indulged except in a case clearly warranting it. *Dymo Indus. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964).  The Ninth Circuit standards for preliminary injunctive relief are well established:

> "The purpose of a preliminary injunction is to preserve rights pending resolution of the merits of the case by the trial." *Big Country Foods, Inc. v. Bd. of Educ.*, 868 F.2d 1085, 1087 (9th Cir. 1989).  A preliminary injunction is appropriate "where plaintiffs demonstrate either: (1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) that serious questions going to the merits were raised and the balance of hardships tips sharply in their favor." *Sw. Voter Registration Educ. Project v. Shelley,* 344 F.3d 914, 918 (9th Cir. 2003) (en banc) Shelley, 344 F.3d at 917 (internal quotation marks and citations omitted).  "The irreducible minimum is that the moving party demonstrate a fair chance of success on the merits or questions serious enough to require litigation.  No chance of success at all will not suffice." *Sports Form, Inc. v. United Press Int'l, Inc.*, 686 F.2d 750, 753 (9th Cir. 1982) (internal punctuation and citations omitted).

*E. & J. Gallo Winery v. Andina Licores S.A.* , 446 F.3d 984, 990 (9th Cir. 2006).  If the balance of harm tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly.  *Benda v. Grand Lodge of the International Association of Machinists*, 584 F.2d 308, 315 (9th Cir. 1978).  The threatened injury must be immediate.  *Los Angeles Memorial Coliseum Comm'n v. National*

1  *Football League*, 634 F.2d 1197, 1201 (9th Cir. 1980).  And since the remedy is equitable in

2  nature, there must be no adequate remedy at law.  *Stanley v. University of S. Cal.*, 13 F.3d 1313,

3  1320 (9th Cir. 1994).  If the relief sought is mandatory rather than prohibitory, the balance must

4  more clearly favor the applicant.  *Dahl v. HEM Pharm. Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993).

5         Here, plaintiff alleges that he is at risk of an attack by fellow prisoners because he has

6  relatives who are employed by the California Department of Corrections and Rehabilitation

7  ("CDCR").  He asserts that prison officials have refused to place a "chrono"[1] in his central file to

8  document this fact and have ordered that he live in dormitory-style housing.  He seeks an order

9  directing that he be housed in a cell with one cellmate in order to minimize the risk of attack.  He

10  does not allege that other prisoners know of his family affiliation or how other prisoners would

11  learn of it.  However, in an attachment to his initial complaint, he states that his grandfather,

12  whose given and surnames were different from those of plaintiff, formerly worked for the

13  CDCR.  Pl.'s Compl., Attach. 1.  This grandfather died in February of 1988, and other prisoners

14  read the obituary and connected him to plaintiff by a reference therein to plaintiff's mother.  *Id.*

15  This caused plaintiff to "have a serious conflict with inmates back then," but he suffered no

16  physical harm.  *Id.*   He also stated that in May of 2003, other prisoners "made comments" to

17  him about an aunt and uncle who were CDCR guards while also making reference to plaintiff's

18  refusal to engage in gang-related violence.  *Id.*  Plaintiff's surname is different from that of his

19  aunt and uncle.  *Id.*  Finally, he asserts that a cousin and brother began working for the CDCR

20  sometime in 2005.  *Id.*  There is no evidence of these relatives' surnames.

21         Plaintiff has not shown probable success on the merits.  To prevail on the merits, he must

22  demonstrate that prison officials were deliberately indifferent to a risk of harm that today's

23

24         [1]  The term "chrono" presumably refers to a "General Chrono," meaning "a CDC Form 128-B (Rev. 4-74) which is used to document information about inmates and inmate behavior. Such information may include, but is not limited to, documentation of enemies, records of

25  disciplinary or classification matters, pay reductions or inability to satisfactorily perform a job, refusal to comply with grooming standards, removal from a program, records of parole or social

26  service matters."  Cal. Code Regs. tit. 15, § 3000.

3

1   society is not prepared to tolerate.  *Helling v. McKinney*, 509 U.S. 25, 36 (1993); *Farmer v.*

2   *Brennan*, 511 U.S. 825, 837 (1994).  To be deliberately indifferent, a prison official must know

3   of, or infer from the circumstances, a risk of harm or injury that "is not one that today's society

4   chooses to tolerate," yet fail to take reasonable actions to mitigate or eliminate that risk.  *Farmer*,

5   511 U.S. at 837.  Even bearing in mind that confinement "strips [plaintiff] of virtually every

6   means of self-protection," *Farmer*, 511 U.S. at 833, he has not offered any facts showing he

7   likely will prevail.  He does not in his complaint or in the attachments to his original complaint

8   allege any specific threat to his safety that would lead a reasonable prison official to believe that

9   plaintiff was then in danger of an attack by a fellow inmate because of his relatives' positions

10  within the CDCR.  In particular, he alleges no facts that would justify a belief that the

11  information apparently gleaned by a few prisoners in February of 1998 and May of 2003 is now

12  or in the future will be known to the prisoners with whom he is housed.  He does not allege that

13  any fellow prisoner knows that his cousin and brother work for the CDCR, or how fellow

14  prisoners could learn of this information.  Without such allegations, plaintiff has not even raised

15  serious questions as to the merits.

16       Neither has he demonstrated that the balance or relative hardships tips sharply in his

17  favor or even a threat of irreparable injury.  From his allegations it is purely speculative whether

18  he will suffer the injury he alleges in the absence of the requested relief.  A showing of

19  speculative injury is insufficient grounds for finding that there is irreparable harm.  *Caribbean*

20  *Marine Serve. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).  There must be a presently

21  existing threat of harm, although injury need not be certain to occur.  *FDIC v. Garner*, 125 F.3d

22  1272, 1279-80 (9th Cir. 1997).  In the absence of a threatened injury that is more than

23  speculative, the court cannot find that the balance of hardships tips sharply in plaintiff's favor.

24  Therefore, plaintiff has failed to satisfy his burden of demonstrating that a preliminary injunction

25  should issue.

26  ////

1    Accordingly, it is hereby recommended that plaintiff's May 19, 2008, motion for a

2    preliminary injunction be denied.

3    These findings and recommendations are submitted to the United States District Judge

4    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after

5    being served with these findings and recommendations, any party may file written objections

6    with the court and serve a copy on all parties.  Such a document should be captioned "Objections

7    to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the

8    specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158

9    F.3d 449, 455 (9th Cir. 1998); *Martinez v. Aalst*, 951 F.2d 1153 (9th Cir. 1991).

10   Dated:  February 11, 2009.

11

12   EDMUND F. BRENNAN
     UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26